**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 18-60005-CIV-ALTONAGA/Seltzer**

KAREN SHREVE, and
All others similarly situated under
29 U.S.C. §216(b),

      Plaintiff,

vs.

CENTURA HOMEOWNERS ASSOCIATION, INC.,

      Defendant.

_____/

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**
**AGREEMENT AND DISMISSAL WITH PREJUDICE**

      Plaintiff Karen Shreve and Defendant Centura Homeowners Association, Inc. (the "Parties"), pursuant to this Court's Order Requiring Submission of Settlement Agreement for Court Approval [DE 24], and hereby file this Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice and state:

      1.     There was no compromise of Plaintiff's alleged damages under the Fair Labor Standards Act (FLSA) as part of the parties' settlement in this matter.

      2.     Based on Plaintiff's Statement of Claim, Plaintiff estimated that she was entitled to $1,575 in unliquidated back pay.  [DE 6].

      3.     In the event Plaintiff was able to prove some violation of the FLSA (which Defendant vehemently denies) and further prove that the FLSA violation was willful, the maximum half-pay amount Plaintiff could have recovered, through trial, was $3,150 in back pay plus liquidated damages.

4.      Defendant raised affirmative defenses claiming that even if Plaintiff were to prove a violation of the FLSA, Defendant had a good-faith defense because it relied on the advice of its accountant.

5.      If Defendant would have been successful with its good-faith defense, Plaintiff would not have been able to recover liquidated damages.

6.      Pursuant to the Parties' Settlement Agreement attached as Exhibit "A," Plaintiff will receive a total of $10,000—this is more than Plaintiff could have recovered, through trial, even if her Statement of Claim were accepted as true.

7.      In fact, the $10,000 is more than Plaintiff could have recovered even if she was awarded damages at the rate of time-and-a-half for all overtime hours worked and that amount is doubled for liquidated damages.  *See* [DE 6].

8.      Plaintiff's Counsel is set to receive a total of $7,500 in fees and costs pursuant to the Settlement Agreement.  *See* Exhibit "A."

9.      Timesheets and costs expended in connection with Plaintiff's legal representation are attached as Exhibit "B."

10.      J. Freddy Perera, Esq., an attorney whose entire legal career has been focused on labor and employment law, represented Plaintiff.

11.      Mr. Perera's website bio describing his experience, focus, and qualifications is attached as Exhibit "C."

12.      In order to secure a settlement in this matter, Mr. Perera agreed to reduce his hourly rate and compensation in this matter.   The effective hourly rate that will be received by Plaintiff's

counsel will be $329.67.[1]   See Exhibit "B" ($7,500 - $445 in costs = $7,055 ÷ 21.4 hours = $329.67).

13.     Costs expended by Plaintiff were $445.  *See* Exhibit "B."

14.     The total settlement amount in this case would be easily dwarfed by the amount of fees that would have been expended to litigation the matter through trial.

15.     For one, Defendant maintained that Plaintiff was an independent contractor during the relevant period. Accordingly, the Parties would have had to engage in continual discovery, including various depositions, inquiring into the full scope of the relationship among Plaintiff and the Defendants. This necessitates a focus on issues such as "control" and "economic dependence."

16.     Because of the settlement, Plaintiff will receive much more than she could have possibly received under the FLSA.

## MEMORANDUM OF LAW

As a general rule, the FLSA's provisions are "mandatory," meaning that they generally are not subject to negotiation or bargaining between employer and employee.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982), *citing Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).  There are two ways, however, that FLSA claims may be settled, compromised, or released by an employee.  *Lynn's Food Stores*, 679 F.2d at 1352-53.  The first, which has no application in the instant case, permits resolution of claims under the supervision of the United

---

[1] A rate of $350 is typically deemed a reasonable hourly rate for lead counsel in FLSA cases.  *See Asbun v. Resende*, 2016 WL 7635459, at *7 (S.D. Fla. Sept. 26, 2016); *Fiedler v. Anglin's Beach Café, LLC*, 2017 WL 1278632, at *1 (S.D. Fla. Apr. 3, 2017); *Gabon v. Kairos Logistics, Inc.*, 2016 WL 6594087, at *4 (S.D. Fla. Nov. 8, 2016).  *See also CC-Aventura, Inc. v. Weitz Co., LLC*, 2008 WL 276057 at *2 (S.D. Fla. Jan. 31, 2008) (***awarding a rate of $400 an hour for a well experienced eight-year associate back in 2008***); *Fouissi v. H. Trading Corp.*, 2017 WL 7796332, at (S.D. Fla. Dec. 14, 2017) (awarding $400 an hour to counsel for plaintiff in an FLSA matter).

States Department of Labor.  *Id.*  The second, which does apply in the instant case, permits judicial approval of disputed claims on terms that are fair and reasonable:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354; *see also Brooks v. Continental Property Services, Inc.*, No. 6:07-cv-1513-ORL-19GJK, 2008 WL 781825 (M.D. Fla. Mar. 19, 2008) (approving FLSA settlement in accordance with *Lynn's Food Stores*); *Swailes v. Surety Construction Co.*, No. 2:07-cv-279-FTM-29DNF, 2008 WL 875981 (M.D. Fla. Mar. 27, 2008) (same).

When asked to review and approve the terms of settlement under the FLSA, there is a "strong presumption" in favor of approval.  *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005); see also *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 U.S. Dist. LEXIS 10287 at *2-3, (M.D. Fla. Jan. 8, 2007).  If the agreement reflects a reasonable compromise over the FLSA issues in dispute, the Court may approve the Agreement "in order to promote the policy of encouraging settlement of litigation." *Lynns's Food*, 679 F. 2d at 1354.

In analyzing a proposed settlement of an FLSA matter, courts consider the reasonableness of the proposed attorneys' fees. *See Helms v. Central Fla. Reg. Hosp.*, No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). In determining the reasonableness of

attorneys' fees, the lodestar is generally recognized as a reasonable fee. *See City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992). The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate.  See *Helms* at 5. Courts have held, however, that it is unnecessary to inquire into the reasonableness of the hourly rate charged by plaintiff's counsel where both parties stipulate as to the reasonableness of the attorney's fees.  *Id.* at 12.

Approval of fees is particularly appropriate when the plaintiff obtains uncompromised relief that was completely unaffected by the amount received by the plaintiff's lawyer.  *See Brenowitz v. Implant Seminars, Inc.*, 2017 WL 3438879, at *3-4 (S.D. Fla. Aug. 10, 2017) ("The Court finds that the settlement here represents a genuine compromise of a bona fide dispute. Plaintiff will receive more than his unpaid wage claim and he therefore did not discount or compromise it to fund his attorney's contingency-based fees." Further noting that "Plaintiff's proposed recovery exceeds the amount of unpaid wages he sought in his statement of claim."); see also  *Natera v. Mastercorp of Tenn., Inc.*, 2009 WL 1515747, at *2 (M.D. Fla. June 1, 2009) (finding "[f]ull recompense of the [FLSA] damage claim is per se fair and reasonable").

Here, the Parties stipulate that the amount allocated for attorney's fees and costs is reasonable based on the amount of time actually spent by Plaintiff's Counsel in prosecuting and ultimately resolving Plaintiffs' claims and the actual costs incurred. In addition, Plaintiff did not compromise the amount of damages alleged in any form.  On the contrary, Plaintiff is receiving more than Plaintiff could have possibly received even if this matter was litigation through trial. As such, the Parties submit that the amounts allocated to the Plaintiff and Plaintiff's counsel represent a fair resolution to this matter.

At all times material hereto, Plaintiff and Defendant were represented by Counsel experienced in the litigation of the FLSA claims.  Both the terms and conditions of the Settlement Agreement and the settlement amount were the subject of arms-length negotiations. In agreeing upon the settlement reached herein, the Parties carefully assessed the claims and defenses, considered the emotional, psychological, and financial costs of litigation, and factored in the uncertainty of litigation.

The Parties, therefore, submit that that the Agreement they have entered into represents a reasonable resolution of Plaintiff's claims consistent with the intent and purpose of the FLSA and the requirements of *Lynn's Food.* Accordingly, the Parties respectfully request that the Court approve the Parties' settlement as fair and reasonable, dismiss this case with prejudice, and reserve jurisdiction to enforce the terms of the settlement.

WHEREFORE, the Parties respectfully request that the Court enter an Order: (1) approving the terms of the Settlement Agreement; (2) retaining jurisdiction to enforce payment terms; and (3) dismissing this action with prejudice.

Dated:  March 29, 2018

Respectfully submitted,

| | |
|---|---|
| By: *_/s/ J. Freddy Perera_*<br>J. Freddy Perera, Esq.<br>Florida Bar No. 93625<br>freddy@pererabarnhart.com<br>**PERERA BARNHART, P.A.**<br>12555 Orange Drive<br>Second Floor<br>Davie, Florida 33330<br>Telephone: 786-485-5232<br>*Counsel for Plaintiff* | By: *_/s/Ashley Landrum_*<br>Karen M. Nissen, Esq.<br>Florida Bar No: 0883671<br>knissen@florida-law.com<br>Ashley M. Landrum, Esq.<br>Florida Bar No: 111594<br>alandrum@florida-law.com<br>**VERNIS & BOWLING**<br>884 US Highway One<br>North Palm Beach, FL 33408<br>Tel: (561) 775-9822 |

| | Fax: (561) 775-9821 |
| | *Counsel for Defendant* |

# EXHIBIT "A"

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Limited Release (hereinafter known as the "Agreement"), is made and entered into between, KAREN SHREVE, including any representatives, successors, heirs, and assigns (hereinafter known as "SHREVE") and CENTURA HOMEOWNERS ASSOCIATION, INC., a Florida not-for-profit corporation its employees, officers, directors, members, owners, current and past board members, current and past management companies, attorneys, accountants, agents, predecessors, successors and assigns (hereinafter known as "CENTURA") on the last date that each of the Parties have executed the Agreement (hereinafter known as the "Effective Date"). SHREVE and CENTURA are sometimes collectively referred to herein as the "Parties."

### RECITALS

WHEREAS, SHREVE filed a lawsuit in the United States District Court for the Southern District of Florida, Case No.: 18-60005-CIV-ALTONAGA/SELTZER, Case Style: Karen Shreve v. Centura Homeowners Association, Inc., concerning an action for unpaid wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. alleging overtime wage compensation, liquidated damages, and reasonable attorney's fees and costs  (hereinafter known as the "LAWSUIT").

WHEREAS, SHREVE and CENTURA, without any admission of liability, are mutually desirous of settling with finality, compromising, extinguishing, and releasing any and all claims they may have against each other, including claims, demands, or rights known or unknown, regarding or relating to the allegations in the LAWSUIT as of the date of this Agreement which were asserted or which might have been asserted against each other in the LAWSUIT.

NOW, THEREFORE, SHREVE and CENTURA agree as follows:

1.	The Parties adopt and incorporate the foregoing recitals as if fully set herein.

2.	The Parties will file a Joint Motion Seeking Approval of the Settlement Agreement and Dismissal With Prejudice.

3.	SHREVE agrees and acknowledges that she shall not in the future provide any services to or on behalf of, or be employed by CENTURA.

4.	SHREVE represents, warrants, and acknowledges that CENTURA does not owe her any wages, commissions, bonuses, vacation pay, or other compensation or payments of any kind or nature, except as set forth in this Agreement

<u>Shreve v. Centura Homeowners Association, Inc.</u>
Settlement Agreement and Release
Page **2** of **6**

5.   SHREVE agrees and understands that the amounts paid by or on behalf of CENTURA pursuant to this Agreement are being paid strictly and solely for purposes of settlement and that CENTURA denies that SHREVE is entitled to receive any relief whatsoever. The parties agree and acknowledge that this Agreement represents a fair, reasonable, good faith and arms-length compromise of disputed issues and claims.

6.   SHREVE agrees that the Settlement Amount as defined below includes payment-in-full of any and all overtime wages, minimum wages, liquidated damages, attorney's fees and costs, and any other damages or amounts which SHREVE claims or alleges is owed to her by CENTURA pursuant to the FLSA and/or Florida's Minimum Wage Law.

7.   In consideration of this Agreement and the mutual promises set forth therein, in full, final, and complete settlement, CENTURA shall pay or cause to be paid to SHREVE and SHREVE's attorney Perera Law Group, P.A., the total gross amount of $17,500.00 (Seventeen Thousand Five Hundred Dollars and no/cents) as follows:

(A) A check from CENTURA payable to SHREVE for the gross sum of Five Thousand Dollars ($5,000), representing payment for alleged unpaid wages.

(B) A check from CENTURA payable to SHREVE for the gross sum of Five Thousand Dollars ($5,000), representing payment for alleged liquidated damages, and/or compensatory damages.

(C) A check from CENTURA to Perera Barnhart for the gross sum of Seven Thousand Five Hundred Dollars ($7,500) representing payment for attorney's fees and costs.

(D) The checks set forth in Paragraphs 7(a), 7(b) and 7(c) shall be delivered to Perera Barnhart within thirty (30) days of full execution of this Agreement and CENTURA's Counsel's receipt of completed form W-9s for SHREVE and Perera Barnhart.

(E) The payment set forth in Paragraph 7(a) above will be reported for tax purposes on form W-2 to be issued by CENTURA to SHREVE, and SHREVE agrees and understands that all applicable taxes shall be withheld from that amount; such taxes shall be withheld based on the most recent form W-4 submitted by SHREVE to CENTURA.

(F) The payments set forth in Paragraphs 7(b) and 7(c) will be reported for tax purposes on form 1099 to be issued by CENTURA to SHREVE and Perera Barnhart, for only those amounts received by each, in accordance with IRS regulations. SHREVE agrees and understands that no taxes shall be withheld from the payments set forth in Paragraphs 7(b). SHREVE agrees and acknowledges that SHREVE and/or Perera Law Group, P.A. will be responsible for the payment of any and all taxes with respect to the payments each receive, and SHREVE represents and warrants that such taxes will be



timely and fully paid. SHREVE also agrees warrants and acknowledges that CENTURA and its insurer, Liberty International Underwriters, shall have no responsibility whatsoever for the payment of any employee-related taxes with respect to the Settlement Amount. Should, for whatever reason, a federal, state or other governmental authority assert that any part of the payments set forth in Paragraphs 7(b) is subject to federal, state or other taxation or withholding, SHREVE understands and agrees that SHREVE is responsible for and shall indemnify and hold harmless CENTURA and its insurer, Liberty International Underwriters, from the payment of any taxes, interest, penalties, levies or assessments applicable thereto.

8.     SHREVE represents and warrants that she has the sole right and exclusive authority to execute this Agreement; and that she has not sold, assigned, transferred, conveyed or otherwise disposed of any claim or demand relating to any matter covered by this Agreement.

9.     CENTURA represents and warrants that it has the sole right and exclusive authority to execute this Agreement; and that it has not sold, assigned, transferred, conveyed, or otherwise disposed of any claim or demand to any matter covered by this Agreement.

10.     SHREVE acknowledges that CENTURA expressly denies any liability whatsoever to SHREVE for the allegations in the LAWSUIT and further acknowledges and agrees that by acceptance of this payment, and in consideration thereof she fully relinquishes and waive forevermore any future claims, demands, or rights, known or reasonably should have been known regarding or relating to the claims, demands, or rights, known or unknown, that could have been raised in the LAWSUIT, subject to the exceptions in this Agreement. The parties acknowledge and agree that SHREVE does not, in any way, waive any right she may have to assert claims relating to employee benefits and SHREVE's allegation that she was misclassified as an independent contractor by CENTURA.   In addition, the parties acknowledge and agree that this Agreement shall not, in any way, affect the current state court lawsuit filed by SHREVE against CENTURA.   SHREVE further acknowledges that this payment shall not be construed as an admission by CENTURA, its representatives, or attorney, of violation of any contract, duty, law, ordinance, regulation, policy, procedure, or governing document, or any other theory of relief, whether federal, state, or local.

11.     In exchange for, and in consideration, of the promises, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, SHREVE and CENTURA agree as follows:

A.     CENTURA hereby releases and forever discharges SHREVE, her attorneys and/or agents, and covenants never to sue or charge any of them with respect to, any and all charges and/or claims known or unknown, raised, regarding, or relating to the LAWSUIT including incidental or consequential claims or damages, expenses incurred, litigation expenses, court costs, attorneys' fees, and any and all other claims,

damages or statutory sums whatsoever which CENTURA may have had or may now or hereafter have or raise against SHREVE, concerning the issues known or unknown, raised or that have been raised in the LAWSUIT.

B.    SHREVE hereby releases and forever discharges CENTURA, its attorneys, employees and/or agents, insurers, Liberty International Underwriters, re-insurers, claims handlers, owners, CENTURA Board Members, past and present, successors and assigns, its accountants, and all other persons, agencies, firms, corporations and entities liable or who might be claimed to be liable, from, and covenant never to sue or charge any of them with respect to, any and all charges and/or claims known or unknown, raised, regarding, or relating to the LAWSUIT including incidental or consequential claims or damages, expenses incurred, litigation expenses, court costs, attorneys' fees, and any and all other claims, damages or statutory sums whatsoever which SHREVE may have had or may now or hereafter have or raise against CENTURA, concerning the issues known or unknown, raised or that have been raised in the LAWSUIT.

C.    This Release does not apply to any rights the Parties may have in the State Case currently pending in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No.: CACE-17-021581, Case Style: <u>Karen Shreve v. Centura Homeowners Association, Inc.</u> alleging violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 *et seq.* and the Florida Whistleblower Act, Fla. Stat. § 448.102 *et seq.*

D.    This Release does not apply to any rights the Parties may have with regard to a potential ERISA and/or benefits-related claim. This Release also does not apply to any rights the Parties may have relating to the potential Federal Statutory claim(s) concerning alleged improper 1099(s) and/or claims relating to her alleged improper misclassification, and the alleged failure to file proper tax documents, including damages for recovery for tax liabilities and/or penalties.

E.    This Agreement shall not be assignable or transferable by SHREVE or by CENTURA.

F.    This Agreement constitutes the entire Agreement and understanding concerning the monetary settlement regarding the LAWSUIT and other subject matters addressed herein between the Parties, and supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof. This is an integrated document.

G.    The Parties acknowledge and agree that the monies in this case discussed above is all that SHREVE is entitled to receive from CENTURA, its representatives, and insurers.

H.    The Parties agree that the terms of this Agreement will be construed and enforced in accordance with the laws of the State of Florida and the United States and



<u>Shreve v. Centura Homeowners Association, Inc.</u>
Settlement Agreement and Release
Page **5** of **6**

that the proper venue is in the United States District Court for the Southern District of Florida in the Fort Lauderdale Division.

I.      The Parties acknowledge that their respective promises in this agreement are contingent upon the Court in the LAWSUIT approving this Agreement as it relates to the LAWSUIT and dismissing the LAWSUIT with prejudice.

J.      If any provision of this Agreement or the application thereof is held invalid, such invalidation shall not affect other provisions or application of this Agreement and to this end the provisions of this Agreement are declared severable.

K.      This Agreement cannot be modified except in writing and signed by the Parties who wish to modify same or as otherwise stated herein.

L.      The Parties acknowledge they have discussed the terms of this Agreement with their attorneys, prior to signing the Agreement, and they acknowledge that they are entering into this Agreement freely, knowingly and voluntarily, with a full understanding of its terms.

M.      This Agreement may be executed in any number or counterparts, with all executed counterparts constituting one Agreement notwithstanding that all signatories are not signatories to the original or the same counterpart. Facsimile copies shall be sufficient as originals.


IN WITNESS WHEREOF this Agreement has been duly executed, effective this _____ day of March, 2018

                    By:

                    _____
                    On Behalf of CENTURA HOMEOWNERS ASSOCIATION, INC.


IN WITNESS WHEREOF this Agreement has been duly executed effective this _____ day of March, 2018

                    By: _____
                    KAREN SHREVE



Shreve v. Centura Homeowners Association, Inc.
Settlement Agreement and Release
Page **6** of **6**



Shreve v. Centura Homeowners Association, Inc.
Settlement Agreement and Release
Page 5 of 6

that the proper venue is in the United States District Court for the Southern District of Florida in the Fort Lauderdale Division.

I.      The Parties acknowledge that their respective promises in this agreement are contingent upon the Court in the LAWSUIT approving this Agreement as it relates to the LAWSUIT and dismissing the LAWSUIT with prejudice.

J.      If any provision of this Agreement or the application thereof is held invalid, such invalidation shall not affect other provisions or application of this Agreement and to this end the provisions of this Agreement are declared severable.

K.      This Agreement cannot be modified except in writing and signed by the Parties who wish to modify same or as otherwise stated herein.

L.      The Parties acknowledge they have discussed the terms of this Agreement with their attorneys, prior to signing the Agreement, and they acknowledge that they are entering into this Agreement freely, knowingly and voluntarily, with a full understanding of its terms.

M.      This Agreement may be executed in any number or counterparts, with all executed counterparts constituting one Agreement notwithstanding that all signatories are not signatories to the original or the same counterpart. Facsimile copies shall be sufficient as originals.

IN WITNESS WHEREOF this Agreement has been duly executed, effective this _____ day of March, 2018

By: _____

On  Behalf  of  CENTURA  HOMEOWNERS ASSOCIATION, INC.

IN WITNESS WHEREOF this Agreement has been duly executed effective this _____ day of March, 2018

By: _____

_____

KAREN SHREVE

# EXHIBIT "B"

## Time & Expenses for Karen Shreve v. Centura -- FEDERAL - 10/01/2016 - 03/29/2018

| Total Billable Hours | Total Billable Amount | Total Billable Expenses |
|---|---|---|
| 21.4 hours | $8,560.00 | $445.00 |



| User | Billable Hours | Total Billable Amount | Billable Expenses | Non-Billable Expenses | Non-Billable Hours |
|---|---|---|---|---|---|
| Valerie Barnhart | 0.0 hours | $0.00 | $0.00 | $0.00 | 0.0 hours |

**Time Entries**

*This user has no time entries for the selected period.*

**Expenses**

*This user has no expenses for the selected period.*



| User | Billable Hours | Total Billable Amount | Billable Expenses | Non-Billable Expenses | Non-Billable Hours |
|---|---|---|---|---|---|
| Paragel Law Clerk | 0.0 hours | $0.00 | $0.00 | $0.00 | 0.0 hours |

**Time Entries**

*This user has no time entries for the selected period.*

**Expenses**

*This user has no expenses for the selected period.*



| User | Billable Hours | Total Billable Amount | Billable Expenses | Non-Billable Expenses | Non-Billable Hours |
|---|---|---|---|---|---|
| Freddy Perera | 21.4 hours | $8,560.00 | $445.00 | $0.00 | 0.0 hours |

**Time Entries**

| Date | Activity | Rate | Duration | Total | Billable | Case Link | Status |
|---|---|---|---|---|---|---|---|
| 10/03/2017 | Meeting | $400.00/hr | 0.8 | $320.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Meeting with client to obtain background facts and documents; | | | | | | |
| 01/02/2018 | Communication | $400.00/hr | 0.1 | $40.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Telephone conferences with client to discuss FLSA case; | | | | | | |

| Date | Activity | Rate | Duration | Total | Billable | Case Link | Status |
|------|----------|------|----------|-------|----------|-----------|--------|
| 01/02/2018 | Drafting, editing, revising | $400.00/hr | 2.7 | $1,080.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting FLSA complaint; | | | | | | |
| 01/02/2018 | Drafting, editing, revising | $400.00/hr | 0.3 | $120.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting civil cover sheet and summons; | | | | | | |
| 01/11/2018 | Communication | $400.00/hr | 0.2 | $80.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Telephone conference with client to prepare statement of claim; | | | | | | |
| 01/12/2018 | Drafting, editing, revising | $400.00/hr | 0.7 | $280.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting statement of claim; | | | | | | |
| 01/12/2018 | Miscellaneous | $400.00/hr | 0.3 | $120.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Conducting calculations of damages at issue; | | | | | | |
| 01/12/2018 | Communication | $400.00/hr | 0.2 | $80.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Telephone conference with client concerning statement of claim; drafting e-mail to client concerning same; | | | | | | |
| 01/23/2018 | Communication | $400.00/hr | 0.1 | $40.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Exchanging e-mails with counsel for Defendants concerning extension of time to respond to complaint; | | | | | | |
| 01/23/2018 | Analysis and Review | $400.00/hr | 0.1 | $40.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Analysis and review of motion for extension of time to respond to complaint; | | | | | | |
| 01/23/2018 | Drafting, editing, revising | $400.00/hr | 0.1 | $40.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting e-mail to o/c concerning documents that must be disclosed pursuant to court order; | | | | | | |
| 01/27/2018 | Drafting, editing, revising | $400.00/hr | 0.3 | $120.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting certificate of interested parties; | | | | | | |
| 02/05/2018 | Communication | $400.00/hr | 0.1 | $40.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Telephone conference with chambers concerning settlement conference; | | | | | | |
| 02/05/2018 | Drafting, editing, revising | $400.00/hr | 0.1 | $40.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting e-mail to o/c concerning scheduling of settlement conference; | | | | | | |
| 02/05/2018 | Drafting, editing, revising | $400.00/hr | 1.4 | $560.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting joint scheduling report; | | | | | | |
| 02/05/2018 | Analysis and Review | $400.00/hr | 0.7 | $280.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Analysis and review of Centura's answer and affirmative defenses; | | | | | | |

| Date | Activity | Rate | Duration | Total | Billable | Case Link | Status |
|------|----------|------|----------|-------|----------|-----------|--------|
| 02/06/2018 | Communication | $400.00/hr | 0.1 | $40.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Telephone conference with o/c concerning scheduling of settlement conference and the proposed JSR; | | | | | | |
| 02/12/2018 | Analysis and Review | $400.00/hr | 0.3 | $120.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Reviewing and editing revised version of JSR received from O/C; | | | | | | |
| 02/12/2018 | Drafting, editing, revising | $400.00/hr | 0.3 | $120.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting joint motion seeking extension of time to have settlement conference and proposed order granting same; | | | | | | |
| 02/13/2018 | Communication | $400.00/hr | 0.2 | $80.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Telephone conference with o/c to discuss possible resolution of matter; | | | | | | |
| 02/13/2018 | Analysis and Review | $400.00/hr | 1.5 | $600.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Analysis and review of documents produced by Defendants; | | | | | | |
| 02/15/2018 | Drafting, editing, revising | $400.00/hr | 2.6 | $1,040.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting first request for production to Defendant; | | | | | | |
| 02/15/2018 | Drafting, editing, revising | $400.00/hr | 0.7 | $280.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting first set of interrogatories; | | | | | | |
| 02/15/2018 | Drafting, editing, revising | $400.00/hr | 1.4 | $560.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting first request for admissions to Defendant; | | | | | | |
| 02/15/2018 | Analysis and Review | $400.00/hr | 0.1 | $40.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Analysis and review of scheduling order and discovery procedures; | | | | | | |
| 02/15/2018 | Communication | $400.00/hr | 0.2 | $80.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Exchanging e-mails with o/c concerning potential settlement; | | | | | | |
| 02/17/2018 | Miscellaneous | $400.00/hr | 0.2 | $80.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Review of court order setting settlement conference and sending email to client concerning same; | | | | | | |
| 02/17/2018 | Analysis and Review | $400.00/hr | 0.7 | $280.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Analysis and review of Defendant's Rule 26 initial disclosures and documents produced in connection with same; | | | | | | |
| 02/19/2018 | Drafting, editing, revising | $400.00/hr | 1.5 | $600.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting confidential settlement statement required for settlement conference; | | | | | | |
| 02/21/2018 | Analysis and Review | $400.00/hr | 0.3 | $120.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Analysis and review of e-mails received from client analyzing Company's document production; | | | | | | |

| Date | Activity | Rate | Duration | Total | Billable | Case Link | Status |
|------|----------|------|----------|-------|----------|-----------|--------|
| 02/27/2018 | Communication | $400.00/hr | 0.2 | $80.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Telephone conference with client to discuss Defendant's settlement offer and strategy for settlement; | | | | | | |
| 02/27/2018 | Communication | $400.00/hr | 0.1 | $40.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Telephone conference with opposing counsel to discuss possible settlement; | | | | | | |
| 03/01/2018 | Settlement | $400.00/hr | 0.2 | $80.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting e-mail to client concerning settlement and conditions for release requested by Defendant; | | | | | | |
| 03/02/2018 | Settlement | $400.00/hr | 0.2 | $80.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Telephone conference with client to discuss settlement and carve out language; | | | | | | |
| 03/02/2018 | Settlement | $400.00/hr | 0.3 | $120.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting e-mail to opposing counsel delineating parameters for settlement; | | | | | | |
| 03/05/2018 | Communication | $400.00/hr | 0.1 | $40.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Telephone conference with client to discuss issue of neutral reference in connection with settlement; | | | | | | |
| 03/16/2018 | Drafting, editing, revising | $400.00/hr | 0.5 | $200.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Reviewing, editing, and revising proposed settlement agreement; | | | | | | |
| 03/22/2018 | Settlement | $400.00/hr | 0.3 | $120.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Reviewing new version of settlement agreement received from opposing counsel; editing and revising same; drafting e-mail to opposing counsel concerning new revisions; | | | | | | |
| 03/29/2018 | Drafting, editing, revising | $400.00/hr | 1.2 | $480.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Drafting detailed joint motion for approval of settlement agreement and dismissal with prejudice; | | | | | | |

## Expenses

| Date | Activity | Cost | Quantity | Total | Billable | Case Link | Status |
|------|----------|------|----------|-------|----------|-----------|--------|
| 01/02/2018 | Filing fee | $400.00 | 1.0 | $400.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Filing fee; | | | | | | |
| 01/03/2018 | Service of Process | $45.00 | 1.0 | $45.00 | Yes | Karen Shreve v. Centura -- FEDERAL | Un-Invoiced |
| | Service of process; | | | | | | |

# EXHIBIT "C"

[pereralaw.com](pereralaw.com)

# Davie Law Firm, Perera Barnhart

4-5 minutes



Freddy Perera is a founding partner of Perera Barnhart. Freddy has elite academic accomplishments, a big firm background, but a passion for personal service—the type of passion that is at the heart of the Firm.

Before attending law school, Freddy obtained his bachelor's degree from Florida Atlantic University where he graduated number one (1) in his class with a perfect 4.0 GPA. Following his undergraduate degree, Freddy worked as a law clerk at the City of Hialeah, where

he became acquainted with public sector law. Thereafter, Freddy attended law school at night and worked as a year-round law clerk at the national labor and employment firm Ford & Harrison, LLP for several years. Prior to his graduation from law school, Freddy also worked as a law clerk at another national labor and employment firm—Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Despite his demanding work schedule, Freddy graduated *summa cum laude* and valedictorian of his graduation class at Nova Southeastern University, Shepard Broad College of Law. Freddy received the Book Award (highest grade) in several courses during law school, including Employment Law, Contract Law, and Legal Writing. In addition to the awards received at Nova, Freddy received the Most Outstanding Labor and Employment Law School Student award issued by the Labor & Employment Section of the Florida Bar.

Following his law school graduation, Freddy joined Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A.—a well-respected full-service law firm in Florida. Freddy worked at Stearns Weaver for approximately five and a half years. During that time, Freddy also served as General Counsel for the Florida Atlantic Research and Development Authority—a public sector special

district—for approximately three and a half years. Freddy served as the lead negotiator in multi-million-dollar labor negotiations, lead counsel in numerous labor and employment litigation cases, lead counsel in arbitration, and handled a wide array of legal matters for many large corporations and several public entities while working at Stearns Weaver.

Although the Firm represents companies and public entities, it also frequently and proudly represents individuals. As a first-generation immigrant raised by a heroic single mother, Freddy learned the importance of helping those in need. Helping workers obtain justice by recovering unpaid compensation or prevailing on cases of unfair treatment is one of the Firm's great joys. While many law firms specialize in either defense or plaintiff work, particularly in the labor and employment law arena, Perera Barnhart believes its experience on both sides gives it a unique advantage in litigation.

Freddy is as a regular lecturer and author with respect to labor and employment matters. Some examples of the presentations he has given include:

- Speaker, "'The Art of the Deal': Negotiation and Psychology In The Workplace," Human Resource Association of Broward County, July 8, 2015.

- Speaker, "Employment Law Issues for Accountants and Financial Professionals," Florida Institute of Certified Public Accountants Miami-Dade Chapter, June 30, 2015.

- Speaker, "What Every Employer Needs to Know about Labor and Employment Laws in Florida," Doral Chamber of Commerce, June 3, 2015.

- Speaker, "Labor & Employment Law Essentials for Employers and Management," Doral Chamber of Commerce, November 5, 2014.

Freddy has been selected as a Super Lawyers, Rising Star. In addition, Freddy served as the Chair of the Law School Liaison Committee of the Florida Bar Labor and Employment Law Section for multiple years. Currently, Freddy is a member of the Cuban American Bar Association and New Dawn Church—a Christian church Freddy represents as General Counsel.